UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| GERALD C. HENLEY, et al., | ) | CASE NO. 1:10 CV 0431 |
| Plaintiffs, | ) ) | JUDGE DAN AARON POLSTER |
| v. | ) ) | MEMORANDUM OF OPINION AND ORDER |
| CLEVELAND BOARD OF EDUC., et al., | ) ) | |
| Defendants. | ) | |

This matter comes before the Court on Plaintiffs' Motion for a Temporary Restraining Order. (Doc. 4.) Pro se plaintiffs Gerald C. Henley and Donna Brown filed both their Complaint and the Motion for a Temporary Restraining Order on March 1, 2010. For the reasons set forth below, the Court denies Plaintiffs' Motion.

*Background*

Plaintiff Gerald Henley describes himself as a taxpayer in Cleveland, Ohio and former president of the Cleveland Board of Education. His co-plaintiff, Donna Brown, states she is a "parent of a student presently attending the Cleveland Municipal School District." (Mot. at 2.) The defendants in the case are the Cleveland Municipal School District, (AKA) Cleveland Metropolitan School District ("the District"), Cleveland Board of Education ("the Board"), Cleveland Mayor Frank G. Jackson and District CEO, Dr. Eugene Sanders.

On February 11, 2010, the District delayed voting on a transformation plan ("the Plan") which provides for academic reforms in the District, but would also close or move 18

schools. See Thomas Ott, Cleveland School Board Will Delay Vote on Transformation Plan until March, CLEVE. PLAIN DEALER, Feb. 11, 2010. The vote was originally scheduled for February 23, 2010, but was postponed by Dr. Sanders until some time in March 2010 to give the Board and the public time to examine last-minute changes. Id.

Plaintiffs now argue the Plan is "'ill conceived' in its planning, preparation and presentation to the public." (Mot. at 2.) They claim that if a March vote is permitted on the Plan, it will cause irreparable harm "in that, physical, mental and academic damage will worsen, and there will be further financial decline, possibly state receivership, and possibly a return by this District to a re-segregated school system." (Mot. at 2.) For reasons not articulated in the Motion, plaintiffs assert the defendants are not properly executing provisions of the No Child Left Behind Act. Moreover, they seek to sustain the restraining order until such time the court is "thoroughly satisfied that a totally comprehensive academic and facilities use plan is in place with professional and community input and is proven [sic] by defendants." (Mot. at 2.)

In the last paragraph of the Motion, plaintiffs assert the defendants are violating the First Amendment by permitting the Word Church to hold weekly religious services at East Technical High School. They claim it is a violation of the Establishment Clause of the United States Constitution because East Technical is a publicly funded school.

*Jurisdiction and Standing*

The court has jurisdiction to consider this case under 28 U.S.C. § 1331. Nevertheless, this court would lack jurisdiction to proceed on the Motion if plaintiffs lack standing to pursue the case. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61(1992). Thus, this court must consider Mr. Henley and Ms. Brown's standing before reaching the merits of their motion.

When a court considers whether a plaintiff has standing to pursue preliminary relief, standing is determined by analyzing the material allegations in the complaint, which must be accepted as true. See Okpalobi v. Foster, 190 F.3d 337, 350 (5th 444Cir.1999) (courts analyze standing for both motions for preliminary injunction and motions to dismiss based on the material

allegations of the complaint); see also Haskell v. Washington Tp., 864 F.2d 1266, 1276 (6th Cir.1988) (reversing district court's grant of defendant's motion to dismiss on ground that plaintiff lacked standing because allegations in complaint were sufficient to establish standing).

Standing involves two levels of inquiry: 1) whether the plaintiff has shown that a "case or controversy" exists, which can be shown by proving actual injury or injury in fact likely to be redressed by a favorable decision; and 2) whether the plaintiff is the proper proponent of the rights on which the action is based. See Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati, 822 F.2d 1390, 1394 (6th Cir.1987). As a mother and next friend, Ms. Brown has standing to sue on her child's behalf. Whether or not, however, there are sufficient allegations in the complaint that the student has suffered an actual injury -- that is, deprivation of his or her constitutional rights under the Establishment Clause or a violation of the No Child Left Behind Act -- cannot be determined at this stage. Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)(at pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim.") Ms. Brown may thus have standing to pursue the complaint.

Based on the facts alleged, Mr. Henley lacks standing in this case. As the Supreme Court recently noted, "a taxpayer's purely psychological disapproval that his funds are being spent in an allegedly unlawful manner is never sufficiently concrete and particularized to support Article III standing." Hein v. Freedom From Religion Foundation, Inc.,551 U.S. 587 (2007). As the Court elaborated further, "[a]s a general matter, the interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for Article III standing." Id. at 599. Mr. Henley has not alleged that he has a child who is enrolled in the District, nor has he expressed what particularized injury he has suffered beyond his taxpayer status.

With regard to his First Amendment claims, a leading case on Establishment Clause

standing, <u>Sullivan v. Syracuse Housing Authority</u>, 962 F.2d 1101 (2d Cir.1992), further undermines Mr. Henley's "direct and personal stake" in the controversy. <u>Id.</u> at 1108.[1]  In <u>Sullivan</u>, it was only when the defendant contracted for a faith-based entity "in a place functionally analogous to Sullivan's own home." <u>Sullivan</u>, 962 F.2d at 1108, that the plaintiff"'s allegations amounted to a sufficiently "direct and personal stake" in the dispute to confer standing.  Here, Mr. Henley maintains the Word Church conducts weekly church services in East Technical High School.  He does not articulate when or how the services are conducted.  More importantly, there is no allegation that he or his child attend the school.  Thus, he has failed to establish any personal stake in the matter for injunctive relief.    The court's analysis of the Motion will, therefore, proceed based solely on Ms. Brown's claim. <u>Summers v. Earth Island Institute</u>, 555 U.S. ----, ----, 129 S.Ct. 1142, 1148-49 (2009)(as in all standing inquiries, the critical question is whether at least one petitioner has "alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.")  (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975).

*Legal Standard*

Federal Civil Rule 65 authorizes the court to grant a temporary restraining order. FED. CIV. R. 65.  Whether injunctive relief should be granted requires consideration of the following four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of preliminary injunctive relief would cause substantial harm to others; and (4) whether the public interest would

---

[1] In <u>Sullivan</u>, the Syracuse Housing Authority contracted for a faith-based entity to operate a religious after-school program in the community center of the public housing development where the plaintiff lived. The district court dismissed the case for lack of standing, but the Second Circuit found a cognizable "spiritual First Amendment injury" and reversed. <u>Id</u>. at 1108. The centerpiece of the analysis hinged on whether Sullivan had a "direct and personal stake" in the controversy. <u>Id</u>. Relying on <u>Sierra Club v. Morton</u>, 405 U.S. 727 (1972), the Second Circuit concluded that the Authority's conduct deprived Sullivan of his right to use and enjoy the community center, that Sullivan "[found] the alleged establishment of religion offensive," and that the Authority's actions essentially established religion "in a place functionally analogous to Sullivan's own home." <u>Sullivan</u>, 962 F.2d at 1108.

The Circuit also concluded that Sullivan's status as a parent whose child had been taught religious songs in the after-school program gave him an additional, independent ground sufficient to support standing. <u>Sullivan</u>, 962 F.2d at 1109.

be served by issuance of preliminary injunctive relief. See Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir.2000); see also Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir.1977).

**A. Strong Likelihood Of Success On The Merits**

Delaying a vote on whether to implement some of the reforms proposed by defendants does not trigger a per se violation of the No Child Left Behind Act. While there are many provisions within the Act, Ms. Brown has not articulated under what provision she is entitled to assert a violation of the Act if a March vote on the Plan is delayed. As noted above, a demonstration of a "generalized grievance" is insufficient to demonstrate a " 'distinct and palpable injury' ... that is likely to be redressed if the requested relief is granted." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 475(1982). Further, Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions, Muskrat v. United States, 219 U.S. 346 (1911), or to entertain 'friendly' suits, United States v. Johnson, 319 U.S. 302 (1943), or to resolve 'political questions,' Luther v. Borden, 48 U.S. 1,7 How.1, 12 L.Ed. 581 (1849), because suits of this character are inconsistent with the judicial function under Art. III. Finally, because Ms. Brown has not fully articulated her standing to address violations of the Establishment Clause, that constitutional claim cannot addressed on the merits at this time.

Given these facts, the court finds Ms. Brown has failed to demonstrate a substantial likelihood of success on the merits of her claim. Thus, this factor of the inquiry weighs against granting her motion for a temporary restraining order.

**B. Irreparable Injury**

Because this court has found that delaying the Board's vote on the Plan does not implicate the violation of any federal statute or constitutional right, it is unlikely Ms. Brown will suffer an irreparable injury if the temporary restraining order does not issue. See ACLU of KY. v. McCreary County, Kentucky, 354 F.3d 438, 445 (6th Cir.2003) (citing Elrod v. Burns, 427 U.S. 347, 373(1976) (affirming district court's grant of preliminary judgment for plaintiffs who alleged violation of their First Amendment rights)). Thus, this factor of the inquiry also weighs against

granting Ms. Brown's motion for a temporary restraining order.

**C. Substantial Harm to Others**

Ms. Brown's failure to show a substantial likelihood of success on the merits of her claim, suggests that the harm to others would outweigh the merits of her claim. See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville, 274 F.3d 377, 400 (6th Cir.2001). Thus, this factor of the inquiry also weighs against granting a motion for a temporary restraining order.

**D. Public Interest**

" 'It is always in the public interest to prevent violation of a party's constitutional rights.' " Id. at 400 (citing G & V Lounge, Inc. v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir.1994)). Here, again, Ms. Brown has not alleged how she has been injured by the violation of any constitutional right. Moreover, the public interest factor cannot be satisfied when the first three factors weigh against granting her motion for a temporary restraining order.

*Conclusion*

Because Ms. Brown has failed to demonstrate a strong likelihood of success on the merits, plaintiffs' motion for temporary restraining order (Doc. 4) is DENIED. Further, Mr. Henley lacks standing to pursue his claims and is dismissed from this action. The Court retains jurisdiction of this matter for further proceedings.

IT IS SO ORDERED.

*/s/Dan Aaron Polster 3/3/10*
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE